**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**JOHNSON LANDSCAPES, INC.,**
**d/b/a VERTICAL EARTH,**

     **Plaintiff,**

  **v.**            **1:06-cv-2525-WSD**

**FCCI INSURANCE COMPANY
AND NATIONAL TRUST
INSURANCE COMPANY,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant National Trust Insurance Company's ("National") Motion for Summary Judgment [13] and Defendant FCCI Insurance Company's ("FCCI") Motion for Summary Judgment [14].

**I. BACKGROUND**

 A. The Events

Plaintiff Johnson Landscapes, Inc. ("Johnson") is in the business of constructing commercial retaining walls. In early 2004, Johnson was a second-tier subcontractor serving under PRS Construction, L.L.C., in connection with construction in The Reserve at Ivy Creek in Buford, Georgia (the "Project").

Johnson was hired to provide labor and equipment to construct a certain retaining wall (the "retaining wall") as part of the Project. In connection with its work in the Project, Johnson purchased a Commercial General Liability Policy from National (the "Policy"), effective from March 10, 2004 to March 10, 2005 (the "Policy period").

On July 1, 2004, during the Policy period, the retaining wall collapsed. The collapse caused damage to other property within the Project, including nearby tennis courts. Various parties involved in the Project demanded that Johnson repair the damage and reconstruct the retaining wall.

Johnson reported the collapse to National and claimed compensation under the Policy for the costs it expected to incur for repair work to third-party property and to reconstruct the retaining wall. National refused Johnson's claim for costs to reconstruct the retaining wall. National maintains the Policy covered only costs for damage to third-party property, such as the tennis courts. FCCI investigated the collapse of the retaining wall on National's behalf to determine what portion of Johnson's claims should be paid.

Johnson obtained an opinion letter from its counsel arguing that the costs of reconstructing the retaining wall should be covered by the Policy. Johnson

-2-

forwarded the opinion letter to FCCI claims adjuster Glenn Rodgers ("Rodgers").

While Johnson negotiated with Rodgers, other parties involved in the Project

pressured Johnson to correct the problems resulting from the collapse, including

repairing damage to third-party property and reconstructing the retaining wall.

Johnson admits it faced a choice between performing this remedial work at the risk

that National would not fully pay its claims under the Policy, or waiting for

National to agree to pay its claims at the risk of being sued by other parties

involved in the Project.  Johnson decided to "proceed with the remedial work with

or without the blessing of Defendants."  (Pls. Resp. at 4.)

　　　Johnson claims that around this time Rodgers informed it that the Policy

would reimburse its costs, including its costs to reconstruct the retaining wall.

National and FCCI deny Rodgers made this representation.[1]  It is undisputed

Rodgers informed Johnson that any costs within the Policy's exclusion for "Your

Work" would not be covered.  Johnson alleges that Rodgers asked it to serve as the

---

[1] Johnson has filed an affidavit asserting a hearsay summary of Rodger's representations (Johnson Aff. at ¶ 16.)  "On a motion for summary judgment, we may consider only that evidence which can be reduced to an admissible form."  Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005).  While National and FCCI deny that Rodger's made this representation, they have not filed any affidavit, deposition testimony, or document to support the contention.

general contractor overseeing the remedial work and also to serve as a subcontractor for reconstructing the retaining wall.  Johnson claims it proceeded with the remedial work and reconstructed the retaining wall in the belief it would be compensated for its costs, excepting only labor costs for reconstructing the retaining wall.

Johnson submitted Policy claims totaling $349,861.45 for labor, equipment, materials, and other costs related to repairing third-party property damage caused by the collapse and for reconstructing the retaining wall.  Johnson notes this amount did not include labor costs associated with reconstructing the retaining wall.  Johnson did, however, claim compensation for equipment, material, and other costs associated with reconstructing the retaining wall.  National paid Johnson $147,662.25, claiming that the remainder of Johnson's claim amount was for costs related to reconstruction of the retaining wall, and excluded from coverage under the Policy.

On September 15, 2006, Johnson filed suit against National and FCCI in the Superior Court of Gwinnett County, Georgia.  Johnson asserted claims under Georgia law for breach of contract and bad faith failure to pay insurance claims. On October 19, 2006, Defendants filed a notice of removal on diversity grounds.

B.   <u>The Policy</u>

The Policy at issue in this case is a standard commercial general liability insurance contract.  The Policy uses routine language that has been extensively reviewed and interpreted by Georgia courts.  In relevant part, the Policy Provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies . . . However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.  We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.

(Policy, at § I.1.a.)

The Policy compensates "'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory . . . ." (<u>Id.</u> at § I.1.b.)  The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."  (<u>Id.</u> at § V.13.)  "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . . [Or the] [l]oss of use of tangible property that is not physically injured. . . ."  (<u>Id.</u> at § V.17.)  The Policy notes, "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any

obligation, or incur any expense, other than for first aid, without our consent."  (<u>Id.</u> at § IV.2.d.)

The Policy contains routine exclusions that exempt certain types of damage or cost from coverage.  Specifically, the Policy does not cover damage to:

> (1) Property you own, rent, or occupy . . . . (4) Personal property in the care, custody, or control of the insured; (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or (6) That particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it.

(<u>Id.</u> at § I.2.j.)

The Policy further excludes coverage for "property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  (<u>Id.</u> at § I.2.b.)  This exclusion does not apply to liability for damages "[t]hat the insured would have in the absence of the contract or agreement . . . ."

The Policy also excludes "Property damage to 'your work' arising out of it or any part of it and included in the 'products-completed hazard.'"  "Your work" is defined as:  "Work or operations performed by you or on your behalf; and . . .

-6-

Materials, parts, or equipment furnished in connection with such work or operations."  (Id. at § V.21.)  "Products-completed hazard" is defined to include:

> (1) . . . all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work; except . . . .
> (2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest possible times:
> > (a) When all the work called for in your contract has been completed.
> > (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> > > (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.  Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

(Id. at § V.16.)

The "Your Work" exclusion does not apply if "the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."  (Id. at § I.2.l.)

## II.  DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."

Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott v. Harris, 127 S.Ct 1769, 1776 (2007).

A.    National's Motion for Summary Judgment

National moves for summary judgment on the grounds that Johnson's claim amounts related to reconstructing the retaining wall are not covered under the Policy.[2]  National argues three grounds for summary judgment: (i) costs for reconstructing the retaining wall are not costs for "property damage," but rather are associated with Johnson's contractual obligations to the Project; (ii) costs to

---

[2]  The complaint asserts only claims for breach of contract and bad faith refusal to pay.  If National's arguments concerning the scope of Policy coverage are correct, it is not liable for either count, to the extent Johnson's damages are for claim amounts related to reconstruction of the retaining wall.  Under Georgia law, bad faith refusal to pay an insurance claim applies only "[i]n the event of a loss *which is covered by a policy of insurance. . . .*"  O.C.G.A. § 33-4-6(a).

National additionally raises an argument for summary judgment dismissing a negligent misrepresentation claim based on Rodger's representations.  The complaint does not allege a negligent misrepresentation claim.  Johnson is therefore not entitled to assert one, and the Court need not address National's argument.

reconstruct the retaining wall are excluded from coverage by the "Your Work" provision; and (iii) Johnson's payment of costs was voluntary and not made with National permission, and thus is not recoverable.

1.      *"Property Damage"*

National first argues it is not obligated to pay costs for reconstruction of the retaining wall because the retaining wall's collapse was not "property damage" caused by an "occurrence" under the Policy.  National argues Johnson was obligated to complete the retaining wall under its separate contracts with the members of the Project, and when the retaining wall collapsed, it had a contractual duty to rebuild it.  The costs associated with the reconstruction were thus not costs resulting from "property damage" caused by an "occurrence," but rather resulted from Johnson's contractual obligations.

In McDonald Const. Co., Inc. v. Bituminous Cas. Corp., 632 S.E.2d 420 (Ga. Ct. App. 2006), the Georgia Court of Appeals considered a virtually identical situation.[3]  McDonald served as a general contractor for a housing project

---

[3] The only significant differences between McDonald and the present case are:  (i) McDonald was a general contractor, not a "second-tier subcontractor," and (ii) McDonald hired a subcontractor to complete repair work rather than completing the work itself.  Johnson does not argue that these differences are relevant to the issue of whether damage to the retaining wall is "property damage"

commissioned by the Augusta Housing Authority.  Id. at 421.  After construction was complete, the second-story floor tiles, which had been installed by a sub-contractor, became delaminated.  Id.  The Housing Authority refused to pay McDonald the full amount under the contract until it corrected the problem.  Id. McDonald hired a subcontractor to reinstall the tiles. Id.  McDonald paid for the tiles, the subcontractor's labor, and additional labor to move furniture and other objects away from the construction area.  Id. at 422-23.  Costs of this latter sort were not incurred in the original tile installation.  Id.

McDonald had purchased a commercial liability insurance policy for its work.  Id. at 421.  The terms of that policy, as stated by the court, are identical to those in the Policy in this case in all relevant respects.  Id.  McDonald's policy provided the same basic coverage, used the same language to define "occurrence" and "property damage," and contained an exclusion for costs incurred as a matter of contractual liability virtually identical to the contract exclusion in the Policy in this case.  Id.

McDonald filed a claim under its policy for the costs it incurred to have the tiles replaced.  Id. at 421-22.  McDonald argued that the tile delamination was an

under the Policy, and the Court finds that they are not.

"occurrence" within its policy because the subcontractor's poor work was an "accident," that is, "an event that takes place without foresight." Id. at 423. The court rejected this construction, stating, "the threshold consideration is whether McDonald incurred the amount it is claiming under the policy after it had become 'legally obligated to pay as damages' sums resulting from either 'bodily injury' or 'property damage' for which the policy provided coverage." Id. The court held, "[f]or there to be coverage . . . for faulty workmanship, there would have to be damage to property other than the work itself and the insured's liability for such damage would have to arise from negligence, not breach of contract." Id. (citation and quotation omitted). "[E]ven if the delamination of the tile was an 'accident' . . . there is no evidence that McDonald's insurance claim arose from an obligation to pay damages for . . . 'property damage' resulting from such 'accident.'" Id. at 424. The court found that McDonald's obligation to replace the tiles arose from its contractual duties to the Housing Authority. Id.

The court noted that commercial general liability insurance "is intended to cover the potentially limitless liability associated with the risk that the work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the completed work itself, and for which the insured may be

found liable." Id.  Because McDonald's costs in replacing the delaminated tiles arose "under its construction contract with the Housing Authority, [and] not from any tort liability that arose outside of the construction contract," the court held that the costs to repair the delamination were the result of "property damage" under the policy, but rather from excluded contractual liability." Id. at 424.

McDonald is dispositive on this issue.[4]  The Policy in this case is virtually identical language to that in McDonald, particularly its definition of "property damage" and its exclusion for contractual liability.  Johnson, like McDonald, was involved with a project that unexpectedly required substantial corrective work. Johnson, like McDonald, was required contractually to incur costs related to the

---

[4] Johnson, in its responsive briefing, elected not to oppose National's construction of the term "property damage" or the Policy's contract liability exclusion.  To the extent that a party fails to respond to a motion, that portion of the motion is deemed unopposed.  Local Rule 7.1B.

corrective work.[5]  The costs incurred to reconstruct the retaining wall were thus not

caused by "property damage," but rather by Johnson's contractual obligations.[6]

2.      *The "Your Work" Exclusion*

National alternatively argues that even if Johnson's costs to reconstruct the

retaining wall resulted from "property damage" rather than its contractual duties,

those costs are excluded from coverage by the "Your Work" provision.  That

provision excludes:  "Property damage to 'your work' arising out of it or any part

of it . . . .  This exclusion does not apply if the damaged work or the work out of

_____

[5]  National claims Johnson had a contractual obligation to the Project to
reconstruct the retaining wall.  Johnson does not deny this assertion, and admits
that it faced a threat of suit from parties with whom it had contracted unless it
reconstructed the retaining wall and repaired the other damage caused by the
collapse.  Although Johnson does not specify whether it feared claims sounding in
tort or in contract, National's claims concerning Johnson's contractual obligation
stand undisputed.  In light of Johnson's election not to deny National's claim that it
had a contractual duty to reconstruct the retaining wall, the Court finds that no
reasonable juror could conclude from the record that Johnson did not have such a
duty.

[6]  Johnson argues it only had to pay for labor when it originally constructed
the retaining wall, but had to pay new additional costs for equipment and materials
during the reconstruction.  These additional costs were not, however, incurred as a
result of "property damage."  In McDonald, the court found that "all of the costs"
incurred by McDonald in the repair work, including new additional costs such as
for extra labor to move furniture to reach the parts of the floor in need of repair,
were not caused by "property damage" within the terms of the policy, and thus
were not covered.  Id. at 424.

-14-

which the damage arises was performed on your behalf by a subcontractor." (<u>Id.</u> at § I.2.l.) "Your work" is defined as "Work or operations performed by you or on your behalf," and also as "Materials, parts, or equipment furnished in connection with such work or operations." (<u>Id.</u> at § V.21.)

Georgia courts have held that this language constitutes a "clear and unambiguous . . . business risk exclusion." <u>Sapp v. State Farm Fire & Cas. Co.</u>, 486 S.E.2d 71, 74 (Ga. Ct. App. 1997). The "Your Work" exclusion is "designed to exclude coverage for defective workmanship by the insured builder causing damage to the construction project itself." <u>Id.</u> <u>See also</u>, <u>Gary L. Shaw Builders v. State Auto Mut. Ins. Co.</u>, 355 S.E.2d 130 (Ga. Ct. App. 1989). "There are two kinds of risk that are incurred by a contractor. The first is the business risk borne by the contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements. This type of risk is not covered . . . ." <u>Sapp</u>, 486 S.E.2d at 74-75.

> The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which [commercial general liability] coverage is contemplated. While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to

> persons and property, the two consequences are vastly
> different in relation to sharing the cost of such risks as a
> matter of insurance underwriting. The risk intended to be
> insured is the possibility that the goods, products or work
> of the insured, once relinquished or completed, will cause
> bodily injury or damage to property other than to the
> product or completed work itself, and for which the
> insured may be found liable.

Id. at 75.

Johnson argues that the "Your Work" exclusion does not apply because it

"was not the primary subcontractor performing the work on the retaining wall, and

material legal and factual issues exist . . . because [Johnson] performed the original

work as a second-tier subcontractor and was not actually the subcontractor

responsible for oversight and performance in connection with the construction of

the retaining wall."  (Pls. Resp. at 9.)  Johnson essentially claims that because its

only contribution to the retaining wall was to provide labor, the "Your Work"

exclusion only prohibits it from recovering its labor costs for reconstructing the

retaining wall.  Johnson appears to claim that because it did not originally pay for

equipment or materials to build the retaining wall, those costs in reconstruction are

not excluded by the "Your Work" provision.

Johnson's argument ignores the plain language of the Policy.  The Policy

defines "Your Work" *both* as "[w]ork or operations performed by you or on your

behalf," *and* as "[m]aterials, parts, or equipment furnished in connection with such work or operations."  (Id. at § V.21.)  Under the plain language of the Policy, the materials, parts, and equipment furnished in connection with the retaining wall, even if originally provided by other parties, are excluded by the "Your Work" provision.

Further, the "Your Work" exclusion applies to "[p]roperty damage to 'your work' arising out of it *or any part of it* . . . ."  (Id. at § I.2.l) (emphasis added).  The need to reconstruct the retaining wall indisputably arose out of some part of Johnson's work on it.  Thus, even if other parties may have been involved in the original work on the retaining wall, the collapse and resulting reconstruction costs fall within the "Your Work" exclusion.

Although Johnson notes that other contractors were ultimately responsible for the original construction of the retaining wall, it does not claim that any relevant work on the wall was performed by them.  The "Your Work" exclusion does not apply when "the work out of which the damage arises was performed on your behalf by a subcontractor."  Johnson does not argue that any relevant work on the retaining wall was performed on its behalf by a subcontractor, only that

Johnson itself was a subcontractor performing work on another's behalf.  This scenario does not escape the scope of the "Your Work" exclusion.

The Court's interpretation of the Policy's language is consistent with the clear guidance of Georgia courts that "Your Work" exclusions are unambiguously intended to relieve insurers of liability unrelated to "the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other than to the product or completed work itself* . . . ."  Sapp, 486 S.E.2d at 75.  Johnson therefore cannot recover costs related to reconstructing the retaining wall.

3.  *The Voluntary Repairs Exclusion*

National last argues that Johnson voluntarily incurred costs to reconstruct the retaining wall without National's consent.  The record plainly shows, however, that a genuine issue of fact exists on this matter.  Johnson claims Rodgers authorized it to complete repairs to the retaining wall on National's behalf, and has supported its contention with an affidavit.[7]  Although National claims no such

_____

[7]  The Johnson affidavit's statements pertaining to Rodgers, although inadmissible hearsay, presents facts that could possibly be reduced to admissible form at trial.

representations were made, its contention is unsupported.  Summary judgment on this ground is not appropriate.

4.    *The Amount Paid*

In response to National's Motion for Summary Judgment, Johnson only briefly opposes National's arguments that costs to reconstruct the retaining wall are not covered by the Policy.  Johnson primarily argues that a genuine issue of material fact exists regarding whether National has fulfilled its obligations under the Policy by compensating Johnson in the correct amount.

Johnson cumulatively seeks two amounts of damages:  (1) $90,652.50 for labor costs related to reconstruction of the retaining wall; and (2) $202,199.20 that National has refused to pay on Johnson's claim for costs to repair damage from the collapse, including both damage to third-party property and reconstruction of the retaining wall.

The Policy does not obligate National to pay the $90,652.50 amount. Johnson admits it seeks this amount to compensate it for labor related to reconstructing the retaining wall.  As noted above, this cost is excluded by multiple provisions of the Policy.

It is not clear whether any portion of the unpaid $202,199.20 amount claimed by Johnson is for costs other than those pertaining to reconstructing the retaining wall.  Johnson is entitled to recover costs associated with damage to third-party property, but is not entitled to recover its costs for reconstructing the retaining wall.

Johnson unambiguously states this amount does "not include any charges which pertain to the rebuilding of the retaining wall . . . ."  (Pls. Resp. at 8.)[8] National categorically claims it has paid all Johnson's claims except those pertaining to reconstructing the retaining wall.  (Defs. Reply at 4.)  After carefully reviewing the briefs, affidavits, and invoices, the Court cannot determine what portion of the unpaid claim amount, if any, reflects costs related to reconstructing the retaining wall.  A genuine issue of fact therefore exists regarding whether National has performed its obligations under the Policy.

B.     FCCI's Motion for Summary Judgment

FCCI moves for summary judgment on the grounds that it is not a party to any insurance contract with Johnson and cannot be held liable for claims under the

---

[8] Johnson's categorical statement is, however, disingenuous.  Later in its briefing, Johnson admits this amount includes some costs pertaining to equipment and materials for the reconstruction of the retaining wall.  (Id. at 8-9.)

Policy.  It is undisputed that FCCI did not issue the Policy.  FCCI claims to be a "sister company" to National.  FCCI was "responsible for handling the claim" made by Johnson. (Harris Aff. ¶ 6.)  Rodgers was an FCCI employee.

The complaint asserts claims only for breach of contract and bad faith refusal to pay an insurance claim.  Although Johnson alleges Rodgers made misleading misrepresentations as to the scope of coverage under the Policy, it has not asserted any claims based on those representations for which Rodgers or FCCI could be held liable.

It is black letter law that FCCI cannot be held liable for the breach of a contract to which it was not a party and did not assent.  O.C.G.A. § 13-3-1.  It is also well-settled that a claim for bad faith refusal to pay an insurance claim can, under Georgia law, only be asserted against the policy issuer.  See, e.g., Moore Group, Inc. v. Singletary, 386 SE.2d 411, 412-14 (Ga. Ct. App. 1989) (holding that insurer's parent company could not be sued for bad faith failure to pay, even though insurer used its parent company's letterhead in communications with the insured, because the parent company "entered into no contract with the appellee . . . .").

In its responsive briefing, Johnson admits that the Court should grant summary judgment "on the issue of Defendant FCCI Insurance Company's involvement in this matter."  (Pls. Resp. at 10.)  The Court accordingly grants summary judgment in FCCI's favor.

**III.   CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that National's Motion for Summary Judgment [13] is **GRANTED IN PART**.  Johnson's claims for costs related to repair or reconstruction of the retaining wall, including costs for labor, parts, materials, and equipment, are not covered by the Policy.

**IT IS FURTHER ORDERED** that FCCI's Motion for Summary Judgment [14] is **GRANTED**.

**SO ORDERED** this 30th day of November, 2007.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE